UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-293(7) (PJS/DTS)

UNITED STATES OF AMERICA,

                Plaintiff,

     v.

DEONTAE JACKSON,
    a/k/a "Leef,"

                Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, Deontae Jackson, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota ("the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Racketeer Influenced and Corrupt Organizations ("RICO") Conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963. The defendant fully understands the nature and elements of the crime with which he has been charged.

1

superseded
D.J

Upon imposition of sentence, if there are remaining counts, the government agrees to move to dismiss those remaining charges against the defendant contained in the Indictment.

2.      **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

a.      Beginning in or about 2009 and continuing through the present, in the District of Minnesota, the defendant and others known and unknown were members of, employed by, and associated with the Lows gang described below, an enterprise engaging in, and the activities of which affected, interstate and foreign commerce, and unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of the Lows gang through a pattern of racketeering activity.

b.      The structure and operation of the Lows included, but is not limited to, the following:

i.      The Lows have been in existence in Minneapolis since approximately 2004. The Lows were primarily active in the northside of Minneapolis.

2

ii.       The gang does not have a formal initiation process to become a member. Prospective Lows members proved their loyalty to the gang by "putting in work"—that is, committing acts of violence for the benefit of the gang or offering another benefit to the gang, i.e., introducing a source for narcotics or firearms. Lows members were expected to "hunt" (i.e., locate and kill) rival gang members—or, as Lows members often referred to rivals, "opps." Lows members were expelled from the gang for failing to "put in work."

iii.      Lows members often disrespected and mocked deceased rival gang members in social media posts. Lows members commonly paid tribute to deceased or incarcerated members publicly on social media. Lows members wore clothing and sported tattoos that paid tribute to deceased Lows members.

iv.      Lows members used common hand signs that were meant to signify a particular Lows sect, pay tribute to deceased gang members, or taunt and disrespect rival gangs.

v.      Within their territory, the Lows congregated at specific businesses in north Minneapolis. Lows also used temporary residences to sell and store their firearms and narcotics, including fentanyl, oxycodone hydrochloride, and marijuana.

c.      The Lows, including its leaders, members, and associates, including prospective members, constituted an "enterprise," as defined in Title

18, United States Code, Section 1961(4)—that is, a group of individuals associated in fact (hereafter "the enterprise"). The enterprise constituted an ongoing organization whose members and associates, including prospective members, functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise was engaged in, and its activities affected, interstate and foreign commerce.

d.     The purposes of the Lows criminal enterprise included, but were not limited to, the following:

i.     Enriching the leaders, members, and associates of the enterprise through, among other things, illegal trafficking of controlled substances and the illegal transfer of firearms.

ii.     Preserving and protecting the power, territory, reputation, and profits of the enterprise through threats, intimidation, violence, and destruction, including, but not limited to, acts involving murder and assault.

iii.     Promoting and enhancing the enterprise and its members' and associates' activities.

iv.     Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and actual violence.

v.      Attacking and retaliating against rival gang members through acts of violence, including, but not limited to, acts involving murder and assault.

e.      The means and methods by which the leaders, members, and associates conducted and participated in the conduct of the affairs of the Lows criminal enterprise included the following:

i.      Members and associates of the enterprise committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including murder, attempted murder, and assault, to protect the enterprise's power, territory, and property.

ii.      To generate income, Lows members and associates engaged in illegal activities under the protection of the enterprise, including narcotics trafficking, weapons trafficking, and other illegal activities.

iii.      In committing, attempting, and planning acts of violence, retaliation, and protection against rival gangs, Lows members and associates acquired, distributed, carried, and used firearms.

iv.      Members and associates of the enterprise employed and used gang-related terminology, symbols, phrases, and gestures to demonstrate affiliation with the gang.

v.      To perpetuate the enterprise and to maintain their power, members and associates of the enterprise committed and conspired to

commit acts involving murder and assault against individuals who posed and were perceived to pose a threat to the enterprise, Lows members, or jeopardized its operations.

vi. Members of the enterprise and their associates are forbidden from cooperating with law enforcement.

f. The defendant agrees that he was a member of, and associated with, the Lows. He further agrees that he and other members of the Lows criminal enterprise knowingly and intentionally conspired to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity including multiple acts of murder, narcotics trafficking, firearms trafficking, and carjacking. Further, as part of the conspiracy, the defendant agreed that a co-conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

g. In furtherance of the conspiracy, and to achieve the objectives thereof, the defendant and others committed the following overt acts in the District of Minnesota and elsewhere:

i. Between February and April 2023, Mr. Jackson sold fentanyl for the Lows Enterprise.

ii. On or about May 2023, Mr. Jackson distributed fentanyl.

iii.    On or about April 26, 2024, Mr. Jackson possessed fentanyl.

iv.    On or about May 2, 2024, Mr. Jackson possessed fentanyl for sale.

h.    For example, on April 26, 2024, law enforcement searched the home in Fridley, Minnesota, where Mr. Jackson was then residing. In Mr. Jackson's bedroom, officers found, among other things, approximately 945 M-30 fentanyl pills (weighing approximately 94.5 grams). At the time, Mr. Jackson was on electronic court monitoring. After the search, Mr. Jackson removed his ankle monitor and absconded from supervision.

i.    In May 2024, law enforcement tracked Mr. Jackson to Bismarck, North Dakota. Officers searched Mr. Jackson's hotel room on May 2, 2024, and found a bag containing 2,599 M-30 fentanyl pills that weighed approximately 270.4 grams. In a second bag, officers found 20 more M-30 fentanyl pills that weighed 2.08 grams.

j.    Mr. Jackson stipulates that he committed the above-described drug-distribution activities as a member of, and in the conduct of the affairs of, the Lows criminal enterprise. He admits that he knew those acts were unlawful and committed those acts knowingly and willfully. Mr. Jackson acknowledges that for purposes of relevant conduct, the charged conspiracy

involved more than 1.2 kilograms of a mixture and substance containing a detectable amount of fentanyl.

3.    **Waiver of Pretrial Motions.**  The defendant understands and agrees that the defendant has certain rights to file pre-trial motions.  As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case.  The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4.    **Waiver of Constitutional Trial Rights.**  The defendant understands that he has the right to go to trial.  At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination.  The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives

each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.      **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.      **Statutory Penalties**. The defendant understands that Count 1 of the Indictment, charging RICO Conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963, is a felony offense that carries the following statutory penalties:

      a.      a maximum of life in prison;

      b.      a supervised release term of up to five years;

      c.      a maximum fine of $250,000;

d.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A); and

e.    the possible loss of eligibility for federal benefits pursuant to 21 U.S.C. § 862(a)(1).

7.    **Guidelines Calculations.**  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing.  The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence.  The parties stipulate to the following guidelines calculations:

a.    Base Offense Level.  The parties stipulate that because the racketeering activity underlying the defendant's offense of RICO Conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963, includes conspiracy to distribute at least 1.2 KG but less than 4 KG of fentanyl, the base offense level is **32.** U.S.S.G. §§ 2A2.1(a)(1), 2D1.1(c)(4).

b.    Specific Offense Characteristics. The parties agree that no specific offense characteristics apply.

c.    Chapter 3 Adjustments. The defendant reserves the right to argue for application of a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2. The government objects to any role adjustment. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **two-level reduction** for acceptance of responsibility pursuant to

U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **one-level reduction** pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e.    Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **VI**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.    Guidelines Range. If the adjusted offense level is 29, and the criminal history category is VI, the Sentencing Guidelines range is **151 to 188 months of imprisonment.**

g.    Fine Range. If the adjusted offense level is 29, the Sentencing Guidelines fine range is $30,000 to $250,000. U.S.S.G. § 5E1.2(c).

h.    Supervised Release. The Sentencing Guidelines' term of supervised release is two years to five years. U.S.S.G. § 5D1.2.

8.    **Revocation of Supervised Release.** The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9.    **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the

applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

Notwithstanding the reservations above, the government agrees to seek a sentence of no more than **120 months' imprisonment**.

11. **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

12. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets

13

held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

13.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 21 U.S.C. § 853(a)(1) and (2), any and all property constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of Count 1 of the Indictment, and any and all property used, or intended to be used, in any manner or part to commit or to facilitate the commission of said violations.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges.

14. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above **188 months' imprisonment.**

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective

15

assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below **120 months' imprisonment**.

15.    **FOIA Requests.**    The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16.    **Complete Agreement.**    This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges the following: (a) he has read the entire

agreement and has reviewed every part of it with the defendant's counsel; (b) he fully understands this plea agreement; (c) no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) he is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) he has entered into this plea agreement freely, voluntarily, and knowingly; and (f) this decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

DANIEL N. ROSEN
United States Attorney

Date: 4/3/26

BY:    Garrett S. Fields
       David M. Classen
       Assistant United States Attorney

Pegah Vakili
DOJ Trial Attorney

Date: 4/3/26

Deontae Jackson
Defendant

Date: 4. 3. 2026

Melvin R. Welch
Counsel for Defendant

17